UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:14-CV-00161-TBR-LLK

FREDDIE SUTTON, Plaintiff,

v.

HOUSING AUTHORITY OF HICKMAN,
KENTUCKY, f/k/a The Municipal
Planning Commission, Defendant/Counterclaimant,

v.

DARRELL DAVIS ROOFING CO., INC., Counterclaim Defendant.

### MEMORANDUM OPINION AND ORDER

Freddie Sutton filed this negligence action against the Housing Authority of Hickman, Kentucky after an awning affixed to a building owned by the Authority collapsed, injuring him in the process. With discovery closed, the Authority seeks summary judgment on all of Sutton's outstanding claims. For the following reasons, the Housing Authority of Hickman, Kentucky's Motion for Summary Judgment, [R. 35], is **DENIED**.

### I.

### A.

The instant action arises from a jobsite accident involving Freddie Sutton, an employee of Darrell Davis Roofing Co., Inc., on premises belonging to the Housing Authority of Hickman, Kentucky. The Housing Authority of Hickman is a public housing community subsidized by the U.S. Department of Housing and Urban Development and organized under Ky. Rev. Stat. § 80.020. [*See* R. 39 at 10–11, 13 (Busby's Deposition); R. 16 at 4, ¶ 2 (Answer to Intervenor Complaint and

1

Counterclaim).] Sometime in 2013, the Authority solicited bids from licensed roofing contractors to replace roofs on twenty-four of its residential and administrative buildings. [*See* R. 39 at 40–42.] The Authority awarded the contract to Darrell Davis Roofing Co., a Tennessee corporation, on July 9, 2013. [*See* R. 35-3 at 3 (Contract); R. 12 at 1, ¶ 1 (Intervenor Complaint).]

The project proceeded without incident until August 23, 2013. On that day, Sutton was working on the roof of an administrative building located at 801 Cedar Street in Hickman, Kentucky. [*See* R. 39 at 43–44; R. 59 at 51 (Busby's Fed. R. Civ. P. 30(b)(6) Deposition).] When Sutton stepped onto an awning affixed to the wall of the building, it collapsed and Sutton fell to the ground. [*See* R. 58-2 at 41–44 (Gray's Report); *see also* R. 35-6 at 2 (Photograph of Building).]

## B.

Subsequently, Sutton filed this action against the Housing Authority of Hickman, bringing claims for common-law premises liability, gross negligence, and negligence *per se*. [*See* R. 1 at 1, 3, ¶¶ 1–2, 10–18 (Complaint).] Darrell Davis Roofing Co. intervened, seeking to recover benefits paid to Sutton under the Tennessee Workers' Compensation Act, Tenn. Code Ann. §§ 50-6-101 *et seq.* [R. 12 at 2, ¶¶ 6–7.] The Authority then counterclaimed against Darrell Davis Roofing Co. for, among other things, indemnity and contribution. [R. 16 at 4–5, ¶¶ 1–8.] Pursuant to the parties' agreement, the Court dismissed Darrell Davis Roofing Co.'s intervening complaint with prejudice. [R. 53 at 1–2 (Order of Voluntary Dismissal).] Now, the Housing Authority of Hickman asks the Court to grant summary judgment as to all of Sutton's outstanding claims. [R. 35 at 1 (Motion for Summary Judgment).]

## II.

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

As the party moving for summary judgment, the Housing Authority of Hickman must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of Sutton's claims. Fed. R. Civ. P. 56(c); *see also Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Assuming the Authority satisfies its burden of production, Sutton "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

### III.

The Housing Authority of Hickman seeks summary judgment on Sutton's various negligence claims. [*See* R. 35 at 1.] In way of preliminary issues, the Authority reasons that because Sutton recovered benefits under the Tennessee Workers' Compensation Act, Tenn. Code Ann. § 50-6-103(a) (2012) (current version at Tenn. Code Ann. § 50-6-103 (2016)), Tennessee law controls. [*See* R. 35-1 at 7–8 (Memorandum in Support); R. 52 at 1–4 (Reply).] Relying on that conclusion, the Authority then argues that it is a "statutory employer" immune from liability under Tenn. Code Ann. § 50-6-113 (2012) (current version at Tenn. Code Ann. § 50-6-113 (2016)). [*See* R. 35-1 at 8–15.] Should Kentucky law apply, however, the Authority makes two additional arguments in the alternative. First, the Authority relies upon the "exclusive remedy" provision of the Kentucky Workers' Compensation Act, Ky. Rev. Stat. § 342.690, as a shield to possible liability for Sutton's injuries. [*See* R. 52 at 4–7.] Second, the Authority challenges Sutton's common-law negligence claim, although briefly, on the ground that it did not owe him a duty of care. [*See id.* at 7–8.]

Looking to Kentucky's choice-of-law principals, the Court concludes that the Commonwealth's law supplies the rule of decision in this diversity action. The Tennessee Workers' Compensation Act, therefore, is of no moment. Accordingly, the Court will address the Authority's two arguments under Kentucky law in turn. For the reasons discussed below, it finds neither persuasive.

### A.

To begin, Sutton and the Housing Authority of Hickman disagree as to whether Kentucky or Tennessee law controls in this diversity action. To resolve that question, the

Court must look to the choice-of-law rules in the forum state—in this case, Kentucky. *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 794 (6th Cir. 2016) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)); *Asher v. Unarco Material Handling, Inc.*, 737 F. Supp. 2d 662, 667 (E.D. Ky. 2010). Since Kentucky applies different choice-of-law rules based on whether a cause of action sounds in contract or tort, it is necessary to first identify the substantive area of law from which the claim at issue arises. *See Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009); *accord Bank of Am., N.A. v. Corporex Cos.*, 99 F. Supp. 3d 708, 712 (E.D. Ky. 2015). For claims sounding in contract, Kentucky applies the "most significant relationship" test articulated in the Restatement (Second) of Conflict of Laws § 188 (Am. Law Inst. 1977) to resolve choice-of-law disputes. *See Lewis v. Am. Family Ins. Grp.*, 555 S.W.2d 579, 581–82 (Ky. 1977); *accord Wells Fargo Fin. Leasing, Inc. v. Griffin*, 970 F. Supp. 2d 700, 707 (W.D. Ky. 2013). For claims sounding in tort, however, any "significant contact" with Kentucky calls for the application of Kentucky law. *See Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky. 1972); *accord Monumental Life Ins. Co. v. Nationwide Ret. Sols., Inc.*, 242 F. Supp. 2d 438, 450 n.8 (W.D. Ky. 2003).

Here, Sutton has pleaded tort claims for negligence, gross negligence, and negligence *per se*. [*See* R. 1 at 3–4, ¶¶ 10–18]. Those claims arise out of injuries Sutton sustained while working in the Commonwealth of Kentucky. [*Id.* at 2, ¶¶ 4–9.] "The occurrence of an accident in Kentucky is, by itself, sufficient to justify the application of Kentucky law." *Harris Corp. v. Comair, Inc.*, 712 F.2d 1069, 1071 (6th Cir. 1983) (citing *Arnett v. Thompson*, 433 S.W.2d 109, 114 (Ky. 1968)). Under well-established choice-of-law principles, then, Kentucky law applies to Sutton's tort claims, including the

5

Authority's defense under the Kentucky Workers' Compensation Act (KWCA), Ky. Rev. Stat. § 342.690(1). *See Reichwein v. Jackson Purchase Energy Corp.*, 397 S.W.3d 413, 416–17 (Ky. Ct. App. 2012).

**B.**

Since Kentucky law controls, the Housing Authority of Hickman first relies on the "exclusive remedy" provision of the KWCA, Ky. Rev. Stat. § 342.690(1), in an effort to defeat Sutton's claims. [*See* R. 52 at 4–7.] Generally speaking, the effect of the exclusive remedy provision "is to insulate from tort liability a 'contractor,'" among other persons, who "'contracts with another' . . . 'to have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation or profession of such person.'" *Granus v. N. Am. Philips Lighting Corp.*, 821 F.2d 1253, 1255 (6th Cir. 1987); *accord Gen. Elec. Co. v. Cain*, 236 S.W.3d 579, 584–85 (Ky. 2007).

In this case, the parties principally disagree about whether Sutton was injured while performing work of a "regular or recurrent" kind. [*See* R. 45 at 12–18 (Response); R. 52 at 4–7.] If not, then the Housing Authority of Hickman is not a "contractor" entitled to up-the-ladder immunity under Ky. Rev. Stat. § 342.690(1). Ultimately, the Court need not resolve that question because, as discussed in the following subparts, the Authority is a governmental entity excluded from the definition of a "person," and, therefore, cannot be considered a "contractor" for purposes of the KWCA. *See Davis v. Hensley*, 256 S.W.3d 16, 18–19 (Ky. 2008) (holding governmental entity not entitled to exclusive remedy defense under the KWCA); *cf. Uninsured Employers' Fund v. City of Salyersville*, 260 S.W.3d 773, 776 (Ky. 2008) (holding governmental entity not subject to corresponding "up-the-ladder" liability under the KWCA).

**1.**

Read together, Ky. Rev. Stat. § 342.690(1) and Ky. Rev. Stat. § 342.610(2)(b) allow "contractors," in certain circumstances, to shield themselves from tort liability for work-related injuries on the basis of the so-called "exclusive remedy" defense.[1]  The term "contractor," for purposes of the KWCA, includes a "*person* who contracts with another . . . [t]o have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such *person*."  Ky. Rev. Stat. § 342.610(2)(b) (emphasis added).  Ky. Rev. Stat. § 342.0011, in turn, defines a "person" as "any individual, partnership, limited partnership, limited liability company, firm, association, trust, joint venture, corporation, or legal representative thereof."  Ky. Rev. Stat. § 342.0011(16).  To be a "contractor" under Ky. Rev. Stat. § 342.610(2)(b), then, one must first be a "person" under Ky. Rev. Stat. § 342.0011(16).

Though the definition of person might "be construed as including certain governmental entities," the Kentucky Supreme Court rejected that reading in *Davis* based on the distinction drawn between "persons" and governmental entities in a related provision in the KWCA, Ky. Rev. Stat. § 342.630.[2]  *Davis*, 256 S.W.3d at 18.  Ky. Rev.

---

[1] The exclusive remedy provision of the Kentucky Works' Compensation Act reads, in pertinent part:

> If an employer secures payment of compensation as required by this chapter, *the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee* . . . .  For purposes of this section, *the term "employer" shall include a "contractor" covered by subsection (2) of KRS 342.610*, whether or not the subcontractor has in fact, secured the payment of compensation.

Ky. Rev. Stat. § 342.690(1) (emphasis added).

[2] The section reads:

> The following shall constitute employers mandatorily subject to, and required to comply with, the provisions of this chapter:

7

Stat. § 342.630 makes it clear that the General Assembly "intended *not* to include governmental entities within the term 'person'" for purposes of the KWCA. *Id.* (emphasis added). Since Ky. Rev. Stat. § 342.610(2) considers "only *persons* to be contractors," governmental entities cannot qualify as a "contractors," and, therefore, the exclusive remedy defense is unavailable to them. *Id.* at 19.

**2.**

The Housing Authority of Hickman is a governmental entity of the sort discussed in *Davis*. It is "a public body corporate and politic, exercising public and essential governmental functions, and having all the powers necessary or convenient to carry out and effectuate the purposes" established for it under state law. Ky. Rev. Stat. § 80.500; *see also* Ky. Rev. Stat. § 80.020(1). It is referred to time and against as a "public body" under Kentucky law. *See* Ky. Rev. Stat. § 80.010(3). In short, the public status of the Housing Authority of Hickman is not subject to reasonable dispute. *See, e.g.*, *Louisville Metro Hous. Auth. Dev. Corp. v. Commonwealth Sec., Inc.*, No. 2012-CA-000073-MR, 2013 WL 3237480, at *7 (Ky. Ct. App. June 28, 2013) (holding housing authority immune from post-judgment interest on account of status as a state agency); *Brooks v. Lexington-Fayette Urban Cty. Hous. Auth.*, 332 S.W.3d 85, 90 (Ky. Ct. App. 2009) (holding housing authority immune from "levy or execution by garnishment as it is a body politic of the Commonwealth"); *Louisville Metro Hous. Auth. v. Burns*, 198 S.W.3d

---

(1) Any person, other than one engaged solely in agriculture, that has in this state one (1) or more employees subject to this chapter.

(2) The state, any agency thereof, and each county, city of any class, school district, sewer district, drainage district, tax district, public or quasipublic corporation, or any other political subdivision or political entity of the state that has one (1) or more employees subject to this chapter.

Ky. Rev. Stat. § 342.630.

147, 149–51 (Ky. Ct. App. 2005) (holding housing authority immune from claim for punitive damages under the Claims Against Local Governments Act, Ky. Rev. Stat. § 65.2003). Because the Authority is a governmental entity, not a "person" as defined in Ky. Rev. Stat. § 342.0011(16), it cannot be considered a "contractor" entitled to the exclusive remedy defense of Ky. Rev. Stat. § 342.690(1). Therefore, summary judgment for the Authority is inappropriate on that basis.

### C.

In the alternative, the Housing Authority of Hickman argues, albeit briefly, that it owed no duty of care to Sutton. [*See* R. 52 at 7–8.] Under Kentucky law, a "negligence claim requires proof of (1) a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury." *Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky. 2012) (citing *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88–89 (Ky. 2003)). Generally speaking, a landowner, like the Authority, "is not responsible to an independent contractor," such as Sutton, "for injury from defects or dangers which the contractor knows of, or ought to know of." *Ralston Purina Co. v. Farley*, 759 S.W.2d 588, 589 (Ky. 1988). To that general proposition, however, there is a long-standing exception: A landowner must exercise "ordinary care to protect an independent contractor who has been called to do some work upon the premises from dangers which he (the owner) knows, and of which the independent contractor is ignorant." *Owens v. Clary*, 75 S.W.2d 536, 537 (Ky. 1934), *cited with approval in Brewster v. Colgate-Palmolive Co.*, 279 S.W.3d 142 (Ky. 2009).

In this case, the Housing Authority of Hickman claims to fall outside that exception for two reasons. First, the awning's structural deficiencies, the Authority says, cannot "constitute a 'hidden' danger necessitating a 'warning' to a construction contractor exercising reasonable care." [R. 52 at 8.] Second, the Authority denies possessing actual knowledge regarding the awning's structural soundness. [*Id.*] Viewing the record in the light most favorable to Sutton, however, the Court is not so sure.[3]

To the first point, there seems to be sufficient evidence to show the awning's structural integrity constituted a hidden danger undiscoverable to Sutton in the exercise of ordinary care. It is undisputed that prior to Sutton's accident, it was impossible to see how the awning was affixed to the structure without disassembling it. [*See* R. 59 at 49–50, 57–58; R. 58-3 at 2, ¶ 3 (Bacon's Declaration).] But that problem was of the Authority's own making: The awning's point of connection was obscured when aluminum fascias and soffits[4] were installed as part of a lead abatement project in 1988. [*See* R. 59 at 64–69.] Those unfamiliar with the original blueprints, then, would need to remove the soffits to determine how the awning was attached to the building. [*See id.* at 49–50; R. 58-3 at 2, ¶ 3.] Consequently, despite inspecting it, employees were unable to discover that only a handful of nails secured the awning to the structure. [*See* R. 43 at 21–23; *see also* R. 58-3 at 2, ¶ 4.]

---

[3] In response to the Housing Authority of Hickman, Kentucky's motion, Freddie Sutton argued that the Authority owed him a statutory duty of care too. [*See* R. 58 at 4–15 (Surreply).] The Authority, however, failed to address Sutton's claim of negligence *per se* in any of its papers. [*See* R. 35-1 at 7–17 (Memorandum in Support); R. 52 at 1–8 (Reply).] Since the Court finds that, at the very least, the Authority owed Sutton a common-law duty of care, it need not—and will not—address Sutton's negligence *per se* theory at this juncture.

[4] A "fascia board" is "a horizontal board fascia covering the joint between the top of a wall and the projecting eaves," *Fascia Board*, *Webster's Third New International Dictionary* 825 (1993), while a "soffit" is "the underside of a part or member of a building (as of an overhang, ceiling, staircase, cornice, or entablature)," *Soffit*, *Webster's Third New International Dictionary* 2165.

10

Multiple employees testified, however, that in their experience the awning ought to have been able to support the weight of two men and, at least, appeared sound. [*See* R. 40 at 21 (Dennis Davis's Deposition); R. 43 at 21–23 (Wheaton's Deposition).] Of course, those appearances were deceiving. In the opinion of Ronald S. Bacon, a licensed civil and structural engineer, the awning "was not capable of supporting the reasonably anticipated temporary construction loads during the re-roofing project." [R. 58-3 at 3, ¶ 6.] The reason, in Bacon's opinion, is simple enough: The awning "was not constructed in accordance with generally accepted building construction practices or generally accepted building construction standards" and failed to "comply with typical building load requirements in existence when it was built." [*Id.*, ¶¶ 5, 7.] In sum, Sutton has demonstrated, in this procedural posture, that the structural deficiencies of the awning created a hidden danger undiscoverable to him in the exercise of ordinary care.

To the second point, a reasonable jury could conclude that the Housing Authority of Hickman had actual knowledge of the awning's structural condition. The structure, including the awning in question, was constructed according to a set of blueprints and specifications commissioned by the Authority. [*See* R. 59 at 21–22, 36, 39–42, 44–48.] The blueprints "show the design and construction" of the buildings and awning, [*see id.* at 21, 44–45, 47–48], while the specifications detail the specified materials and methods used by the contractor who originally constructed the project, [*see id.* at 40–42]. Prior to accepting and paying for that contractor's work, the Authority (then known as the Municipal Planning Commission) conducted an independent inspection to determine that the contractor had completed construction of all buildings according to the supplied blueprints and specifications. [*See id.* at 36–37, 42.] The inspection included the awning

11

affixed to the structure at 801 Cedar Street. [*See id.* at 47–48.] Affording him the benefit of all reasonable inferences, Sutton has come forward with enough evidence to suggest that the Housing Authority of Hickman possessed actual knowledge of the dangerous condition of the awning prior to the accident. *See CertainTeed Corp. v. Dexter*, 330 S.W.3d 64, 81 (Ky. 2010) ("Absolute proof of knowledge is not required to create civil liability.").

### IV.

**IT IS HEREBY ORDERED** that the Housing Authority of Hickman, Kentucky's Motion for Summary Judgment, [R. 35], is **DENIED**.

**IT IS SO ORDERED**.

Date:

cc:     Counsel of Record